**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| REGINA H. FLORENCE, | ) |
| Plaintiff, | ) Case No.: 2:16-cv-0587-GMN-NJK |
| vs. | ) |
| | ) **ORDER** |
| CENLAR FEDERAL SAVINGS & LOAN; SELECT PORTFOLIO SERVICING, INC.; SHELLPOINT MORTGAGE SERVICING; EXPERIAN INFORMATION SOLUTIONS, INC., | ) |
| Defendants. | ) |
| WILLIAM E. FLORENCE, | ) |
| Plaintiff, | ) |
| vs. | ) |
| REALTIME RESOLUTIONS INC; SHELLPOINT MORTGAGE SERVICING; STATE FARM BANK; CENLAR FEDERAL SAVINGS & LOAN; COMMONWEALTH FINANCIAL SYSTEMS; PLUSFOUR (SOUTHWEST MEDICAL); SELECT PORTFOLIO SERVICING; EQUIFAX INFORMATION SERVICES, LLC, EXPERIAN INFORMATION SOLUTIONS, INC., | ) |
| Defendants. | ) |

Pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 161), and the sealed, unredacted Motion for Partial Summary Judgment, (ECF No. 162), filed by Plaintiff William E. Florence, ("Mr. Florence"). Defendant Experian Information Solutions,

Inc., ("Experian") filed a Response, (ECF No. 167), and Mr. Florence filed a Reply, (ECF No. 169).

Also pending before the Court is the Motion for Partial Summary Judgment, (ECF No. 163), and the sealed, unredacted Motion for Partial Summary Judgment, (ECF No. 164), filed by Plaintiff Regina H. Florence, ("Mrs. Florence") (collectively "Plaintiffs"). Experian filed a Response, (ECF No. 165), and Mrs. Florence filed a Reply, (ECF No. 170).

Also pending before the Court are the Motions for Summary Judgment, (ECF Nos. 171, 172), filed by Experian against Plaintiffs. Plaintiffs filed Responses, (ECF Nos. 173, 175), and Experian filed Replies, (ECF Nos. 176, 178).

## I. **BACKGROUND**

This case arises out of allegations that Experian, a credit reporting agency ("CRA"), falsely reported negative and inaccurate information on its credit reports after Plaintiffs' debts had been discharged in bankruptcy. (Mrs. Florence's Compl., ECF No. 1); (Mr. Florence's Compl., 2:16-cv-0692-GMN-NJK, ECF No. 1). Specifically, Plaintiffs filed Chapter 13 bankruptcy on April 27, 2012. (Mrs. Florence's Mot. for Summ. J. ("MSJ") 2:19–20, ECF No. 163)[1]; (*see* Bankr. Case, 12-13518-MKN); (Bankr. Pet., Ex. 1 to Mrs. Florence's MSJ, ECF No. 163-3) (hereinafter the "Bankruptcy" or "Bankruptcy Petition"). In the Bankruptcy, Plaintiffs had three accounts in common that were rectified: the Shellpoint account, the Select Portfolio Servicing ("SPS") account, and the Cenlar account (collectively the "mortgage accounts").

Concerning the Shellpoint account, Plaintiffs state that the Schedule D of their Bankruptcy Petition (the "Petition") listed the mortgage with Shellpoint for their property located at 7922 Lookout Rock Circle, Las Vegas, Nevada 89129. (Bankr. Pet. at 21, Ex. 1 to

---

[1] Where Mrs. Florence's Motion for Summary Judgment and Mr. Florence's Motion for Summary Judgment are identical, the Court will only cite to Mrs. Florence's, (ECF No. 163).

Mrs. Florence's MSJ). On May 3, 2013, the bankruptcy court entered its order confirming Plaintiffs' Chapter 13 Plan of Reorganization (the "Confirmed Plan"). (Confirmed Plan, Ex. 5 to Mrs. Florence's MSJ, ECF No. 163-6). Pursuant to the Confirmed Plan, on November 25, 2013, Plaintiffs had completed all payments that pertained to the Shellpoint account. (Ex. 6 to Mrs. Florence's MSJ, ECF No. 163-7).

Regarding the SPS account, Plaintiffs state that the Schedule D of their Petition listed the mortgage with SPS for their property located at 5508 Big Sky Lane, Las Vegas, Nevada 89145 (the "Big Sky property"). (Bankr. Pet. at 22, Ex. 1 to Mrs. Florence's MSJ). Pursuant to the Confirmed Plan, Plaintiffs surrendered the Big Sky property in payment of its debt, and all payments were received during the Confirmed Plan payment period. (Ex. 6 to Mrs. Florence's MSJ, ECF No. 163-7). As to the Cenlar account, Cenlar was the second mortgage taken out on the Big Sky property. In surrendering the Big Sky property, the Cenlar account received payment of its debt pursuant to the Confirmed Plan. (*Id.* at 2).

In addition to these mortgage accounts, Plaintiffs collectively contest their Wells Fargo Judgment (the "Judgment"). Specifically, in a case related to the Big Sky property, Wells Fargo obtained a default judgment against Plaintiffs for $328,681.25 for judicial foreclosure and the right to a deficiency judgment against Plaintiffs in the event the sale proceeds did not satisfy the payment obligations. (Ex. 7 to Mrs. Florence's MSJ, ECF No. 163-8); (Ex. 8 to Mrs. Florence's MSJ, ECF No. 163-9). Plaintiffs only became aware of the Judgment in November 2015. (Decl. of Mrs. Florence ¶ 4, Ex. B to Mrs. Florence's MSJ, No. 163-2).

On January 24, 2014, the bankruptcy court entered its order discharging Plaintiffs from their Confirmed Plan (the "Discharge"). (Ex. 9 to Mrs. Florence's MSJ, ECF No. 163-10).

On September 30, 2015, Plaintiffs received their consumer reports from Experian, where they noticed "several apparent inaccuracies." (Mrs. Florence's MSJ 5:8–11); (Ex. 10 to Mrs. Florence's MSJ, ECF No. 163-11). On November 9, 2015 Plaintiffs sent Experian notices of

their disputes concerning these inaccuracies. (Decl. of Mrs. Florence ¶¶ 5–10, Ex. B to Mrs. Florence's MSJ).

Specifically, Plaintiffs disputed their mortgage accounts appearing on the consumer report because they argued that these accounts were discharged through their bankruptcy. (Mrs. Florence's MSJ 5:20–6:18). Plaintiffs contested the Judgment as well because Plaintiffs argue that the Judgment was obtained in violation of the automatic stay placed on the account due to the bankruptcy. (Mrs. Florence's MSJ 5:20–6:18).

After Plaintiffs contacted Experian and Experian conducted four reinvestigations, Experian updated the Shellpoint account to "indicate that Plaintiff[s] included the Shellpoint Account in [their] Chapter 13 Bankruptcy," (*see, e.g.*, Mrs. Florence's MSJ 8:7–8), Experian updated the SPS account to "Discharged through Bankruptcy Chapter 13," (Experian's First MSJ 6:9–10), and Experian updated the Cenlar account to "closed" for April 2012, (Mrs. Florence's MSJ 14:2–3). For the Judgment, Experian updated the amount in dispute and did not remove the Judgment from the report until the third reinvestigation, where Experian deleted the Judgment from Plaintiffs' file pursuant to a request on behalf of Plaintiffs from the reseller Credit Information Systems. (Mrs. Florence's MSJ 14:8–15).

Mrs. Florence filed suit under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq.*, on March 16, 2016, and Mr. Florence filed an almost identical suit on March 30, 2016. (Mrs. Florence's Compl., ECF No. 1); (Mr. Florence's Compl., 2:16-cv-0692-GMN-NJK, ECF No. 1). Both Complaints list a single cause of action for "Violation of the Fair Credit Reporting Act." (*See* Plaintiffs' Compls.); *see also* 15 U.S.C. § 1681 *et seq*. The cases were consolidated on November 17, 2016.

On May 18, 2017, Plaintiffs filed separately their Motions for Summary Judgment seeking partial summary judgment against Experian as to liability only.[2] (*See* Pls.' MSJs, ECF Nos. 161, 162, 163, 164). On May 19, 2017, Experian filed Motions for Summary Judgment against Plaintiffs seeking summary judgment on the § 1681i claim asserted against it. (*See* Experian's MSJs, ECF Nos. 171, 172).

## II. LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.* "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103–04 (9th Cir. 1999)). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp.*

---

[2] Plaintiffs only seek summary judgment on liability because Plaintiffs believe that "calculation of [their] damages is best decided by a jury of [their] peers." (Mrs. Florence's MSJ 2:4–5).

*Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted). In contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

## III. DISCUSSION

The FCRA was enacted to ensure that CRAs adopt reasonable procedures to meet the needs of commerce that also fairly and equitably provide for confidentiality, accuracy, relevancy, and proper utilization of consumer information. 15 U.S.C. § 1681(b). Under § 1618i-a(1), after receiving notice of a dispute from a consumer, a CRA must "conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information." 15 U.S.C. § 1618i-a(1). Moreover, the FCRA expressly creates a private right of action against a CRA for its negligent or willful noncompliance with this requirement. 15 U.S.C. §§ 1681n, 1681o; *Gorman v. Wolpoff & Abramson LLP*, 584 F.3d 1147, 1154 (9th Cir. 2009).

Plaintiffs allege that Experian violated 15 U.S.C. § 1681i "for failure to conduct a reasonable reinvestigation."[3] (Mrs. Florence's MSJ 18:1–2). Pursuant to § 1681i, a CRA must reasonably reinvestigate an item in a consumer's credit file once the consumer directly notifies the agency of a possible inaccuracy. 15 U.S.C. § 1681i(a)(1)(A). This provision also requires a CRA to review and consider all relevant information submitted by the consumer, § 1681i(a)(4), and promptly provide the credit-grantor of the disputed item with all relevant information regarding the dispute, § 1681i(a)(2)(B). In the event the reinvestigation discovers that the reported information is inaccurate, incomplete, or unverifiable, the CRA must promptly delete or modify the information as appropriate. § 1681i(a)(5)(A).

Because the parties here have each filed Motions for Summary Judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir.2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-

---

[3] Although Plaintiffs' Complaints allege violations of § U.S.C. 1681s-2(b), the subsections other than § 1681i "do[ ] not impose any duty, nor [do they] create any cause of action, against a CRA." *See Gorman*, 584 F.3d at 1154.

motion." *Id.* As such, the Court will first address Mrs. Florence's Motion for Summary Judgment, (ECF Nos. 163, 164), then address Mr. Florence's Motion for Summary Judgment, (ECF Nos. 161, 162), and then turn to Experian's Motions for Summary Judgment, (ECF Nos. 171, 172).

### A. Mrs. Florence's Motion for Summary Judgment

Mrs. Florence seeks partial summary judgment on Experian's "liability for inaccurately reporting information on Plaintiff's consumer report" pursuant to § 1681i. (*See* Mrs. Florence's MSJ 2:2–3). To succeed on a § 1681i claim, a plaintiff must show that: (1) plaintiff's credit file contains inaccurate or incomplete information; (2) plaintiff notified the credit reporting agency directly of the inaccurate or incomplete information; (3) plaintiff's dispute is not frivolous or irrelevant; (4) the CRA failed to respond to plaintiff's dispute; (5) the failure to reinvestigate caused plaintiff to suffer damages; and (6) actual damages, such as damages caused by humiliation, mental distress, or injury to reputation or creditworthiness, resulted to plaintiff. *Carvalho v. Equifax Info. Servs., LLC*, 588 F. Supp. 2d 1089, 1095 (N.D. Cal. 2008), *aff'd*, 629 F.3d 876 (9th Cir. 2010); (Mrs. Florence's MSJ 25:21–26:2); (Resp. 8:21–9:2).

The outcome of these Motions turns on the issue of whether Plaintiffs' credit reports were accurate within the meaning of the FCRA. *Carvalho*, 588 F. Supp. 2d at 1095. The remaining issues—whether Experian's reporting and reinvestigation procedures were reasonable—are typically jury questions inappropriate for resolution on a motion for summary judgment. *See Gauci v. Citi Mortg.*, No. 2:11-cv-01387-ODW, 2012 WL 1535654, at *4 (C.D. Cal. Apr. 30, 2012). Accordingly, the Court first considers whether Plaintiffs' credit reports were accurate under the FCRA.

In the Ninth Circuit, a plaintiff must preliminarily show that an inaccuracy existed in her credit reports. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (holding that although the FCRA's reinvestigation provision "does not on its face require that

an actual inaccuracy exist for a plaintiff to state a claim, many courts, including our own, have imposed such a requirement"); *see Dennis v. BEH-1, LLC,* 520 F.3d 1066, 1069 (9th Cir. 2008). In fact, the Ninth Circuit has held in an unpublished opinion that FCRA violations under § 1681 generally require a prima facie showing of inaccuracy. *See Kruse v. Experian Information Solutions, Inc.*, 471 Fed. Appx. 714, 715 (9th Cir. 2012) ("Summary judgment was properly granted in favor of Experian because Kruse has not shown any inaccuracies in his credit report, as is required to maintain an FCRA claim."). Moreover, "credit reports are considered accurate under the FCRA where the credit reporting agencies correctly report information furnished by the creditor, even when there is a pending legal dispute between plaintiff and creditor as to the validity of the debt." *Gauci v. Citi Mortg.*, No. 2:11-cv-01387-ODW, 2012 WL 1535654, at *5 (C.D. Cal. Apr. 30, 2012).

An item on a credit report can be inaccurate "because it is patently incorrect, or because it is [materially] misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions." *Carvalho*, 629 F.3d at 890. In regards to a bankruptcy, the provisions of a confirmed bankruptcy plan "bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327.

The FCRA, however, does not impose strict liability on CRAs for reporting inaccurate information. *See Guimond v. Trans Union Credit Info. Co.*, 45 F.3d 1329, 1333 (9th Cir. 1995). Because of this, CRAs are not liable for failing to reinvestigate alleged inaccuracies of which they have no notice. *See, e.g.*, *Casella v. Equifax Credit Information Services*, 56 F.3d 469, 474 (2d Cir. 1995) ("Prior to being notified by consumer, a credit reporting agency generally has no duty to reinvestigate credit information."); *Johnson v. Wells Fargo Home Mortg., Inc.*, 558 F. Supp. 2d 1114, 1135–36 (D. Nev. 2008) (explaining that "no violation" of the duty to properly reinvestigate "can occur until after the 30-day deadline for completing a proper reinvestigation

has expired"); *see Gauci v. Citi Mortg.*, 2012 WL 1535654, at *4 (C.D. Cal. Apr. 30, 2012) ("When the plaintiff fails to establish an actual inaccuracy, courts may properly grant summary judgment in favor of credit reporting agency defendants.").

As a court stated in this District, "[t]he [c]ourt was unaware of any statute or case providing that discharge in bankruptcy makes a debt unreportable as opposed to uncollectable." *Abeyta v. Bank of Am.*, No. 2:15-cv-02320-RCJ-NJK, 2016 WL 1298109, at *2 (D. Nev. Mar. 31, 2016). "The fact that Congress explicitly permits bankruptcies themselves to be reported for ten years from the date of discharge, *see* 15 U.S.C. § 1681c(a)(1), undermines any argument that Congress intended specific debts discharged in bankruptcy to be categorically unreportable." *Id.* Moreover, "the details of such debts are listed in the publicly available bankruptcy schedules." *Id.* The court concluded that because the FCRA does not prevent the reporting of delinquencies as to discharged debts for seven years and bankruptcies for ten years, "Congress has thereby chosen a balance between rescuing consumers from overwhelming debt by providing a discharge mechanism and protecting potential creditors going forward by permitting the reporting of delinquencies concerning the discharged debt, as well as the fact of bankruptcy itself, for the relevant periods." *Id.*

Here, Mrs. Florence argues that "the Shellpoint and SPS Accounts were both subject to the controlling terms of . . . [the] Confirmed Plan, thus any derogatory information reported . . . after the petition date could only be reported if at all, if [Mrs. Florence] failed to meet her obligations under the [Confirmed] Plan." (Mrs. Florence's MSJ 20:20–23). Mrs. Florence continues, "[t]he undisputed facts establish that both [Shellpoint and SPS] were paid under the [C]onfirmed Plan." (Mrs. Florence's MSJ 21:4–5). Experian argues, however, that because the information reported occurred before the Discharge, Mrs. Florence cannot establish any inaccuracy. (Resp. 2:5, ECF No. 165).

Although the Bankruptcy Code prevents certain collection activities, it does not alter the fact of delinquency. Essentially, "the FCRA does not prohibit the accurate reporting, after discharge, of debts that were delinquent during the pendency of the bankruptcy action." *Mortimer v. Bank of Am.*, 2013 WL 1501452, at *10 (N.D. Cal. Apr. 10, 2013). Although Mrs. Florence alleges that the Confirmed Plan and the Discharge could be rereported only if she "failed to meet her obligations under the [Confirmed] Plan," it does not render the reports in their prior delinquency false in-and-of-themselves. *See Abeyta*, 2016 WL 1298109, at *2; *see. e.g.*, *Polvorosa v. Allied Collection Serv., Inc.*, No. 2:16–cv–1508-JCM-CWH, 2017 WL 29331, at *3 (D. Nev. Jan. 3, 2017) ("[R]eporting delinquencies during the pendency of a bankruptcy or during a bankruptcy's automatic stay is not itself a violation of the FCRA."); *Doster v. Experian Info. Sols., Inc.*, No. 16-cv-04629-LHK, 2017 WL 264401, at *4 (N.D. Cal. Jan. 20, 2017) ("[A]s a matter of law it is not misleading or inaccurate to report a delinquent debt during the pendency of a bankruptcy.").

Mrs. Florence asserts that Experian continued to rereport monthly account balances and scheduled payments "for the period of March 2014 through September 2015," after the Discharge. (Mrs. Florence's MSJ 21:5–7). However, "historically accurate debts may be reported even after discharge, so long as the credit report indicates that the debts were discharged in bankruptcy." *Harris v. Experian Info. Sols., Inc.*, No. 16-cv-02162-BLF, 2017 WL 1354778, at *6 (N.D. Cal. Apr. 13, 2017); *see Mortimer*, 2013 WL 1501452, at *9–11 (holding that the furnisher's reporting that the debt had been delinquent during the pendency of the bankruptcy was historically accurate and thus not actionable under the FCRA where report also indicated that the debt had been discharged in bankruptcy). Once Mrs. Florence notified Experian that these debts were remedied by the Confirmed Plan and Discharge, and Experian concluded its reinvestigations, Experian updated the Shellpoint and SPS accounts to state "Discharged through Bankruptcy Chapter 13." (December 10, 2015 Consumer Disclosure at 6,

Ex. E to Resp., ECF No. 165-5). Because the actual existence of these debts were not patently false, and Experian ultimately updated the reports to state that they were discharged, the Court denies summary judgment on the Shellpoint and SPS accounts.[4] *See Abeyta v. Bank of Am.*, 2016 WL 1298109, at *2.

In addition to the mortgage accounts, Mrs. Florence contests the reporting of the Judgment because "Wells Fargo did move successfully to lift the automatic stay, but did not receive any right to proceed against [Mrs. Florence] personally." (Mrs. Florence's MSJ 24:7–8). Mrs. Florence continues, "[a]ccordingly, the Judgment was void *ab initio*, and although Wells Fargo obtained a judgment, it was materially misleading to rereport it against the backdrop of the fact that Wells Fargo obtained it in violation of the stay." (*Id.* 24:9–11).

However, "[w]ith respect to the accuracy of disputed information, the CRA is a third party, lacking any direct relationship with the consumer, and its responsibility is to '*re-investigate*' a matter once already investigated in the first place." *Gorman*, 584 F.3d at 1157 (quoting 15 U.S.C. § 1681i(a)(1)). Hence, a consumer disputing the legal validity of a debt that appears on her credit report should generally first attempt to resolve the matter directly with the creditor, furnisher, or source of the debt, which "stands in a far better position to make a thorough investigation of a disputed debt than the CRA does on reinvestigation." *See id.* at 1156.

Moreover, a CRA is not required as part of its reinvestigation duties to provide a legal opinion on the merits. *Carvalho*, 629 F.3d at 892. Indeed, determining whether the consumer has a valid defense "is a question for a court to resolve in a suit against the [creditor,] not a job

---

[4] As to the Cenlar Account, Mrs. Florence fails to allege in her Motion for Summary Judgment that an inaccuracy existed and, in fact, states "Experian appeared to correct the payment history by deleting the post-petition derogatory reporting and reporting instead only 'closed' for April 2012." (Mrs. Florence's MSJ 14:1–3). Pursuant to this, the Court construes Mrs. Florence's claim against Experian concerning Cenlar dismissed.

imposed upon consumer reporting agencies by the FCRA." *Id.* Nor is a CRA obligated not to report any information about the disputed item simply because the consumer asserts a legal defense. *Id.* "[T]he very economic purpose for credit reporting companies would be significantly vitiated if they shaded every credit history in their files in the best possible light for the consumer." *Cahlin v. Gen. Motors Acceptance Corp.*, 936 F.2d 1151, 1158 (11th Cir. 1991).

Here, Mrs. Florence's allegations against Experian regarding the Judgment center around Mrs. Florence contesting the validity of the Judgment appearing on the report—an issue Experian has no control over as it is an issue with a court. Mrs. Florence demonstrates this in her Motion where she asserts that Wells Fargo obtained the judgment in violation of the bankruptcy stay. (Mrs. Florence's MSJ 24:9–11). Experian, however, is not mandated by the FCRA to investigate the validity of the court-entered judgment as it "is a question for a court to resolve in a suit . . . not a job imposed upon consumer reporting agencies by the FCRA." *Carvalho*, 629 F.3d at 892. Ultimately, as Mrs. Florence acknowledges in her Reply, "Experian removed the 'satisfied' Judgment from [Mrs. Florence's] credit report" on March 29, 2016. (Mrs. Florence's Reply 8:7–8). As such, Experian cannot be found liable for reporting the Judgment as the existence of the Judgment was not inaccurate, and the Court therefore denies summary judgment as to this issue.

Finally, Mrs. Florence argues that "Experian rereported materially misleading information in the payment history fields for the Shellpoint and SPS [accounts] because of its failure to conform to the 2015 Metro 2." (Mrs. Florence's MSJ 22:1–2). Courts in this Circuit hold, however, that "accurately reporting a delinquent debt during the pendency of a bankruptcy is not rendered unlawful simply because a plaintiff alleges that the reporting, though accurate, was inconsistent with industry standards." *Doster v. Experian Info. Sols., Inc.*, No. 16-cv-04629-LHK, 2017 WL 264401, at *5 (N.D. Cal. Jan. 20, 2017); Mortimer, 2013 WL

1501452, at *12 ("To the extent that the account was delinquent during the pendency of the bankruptcy, failure to comply with the CDIA guidelines does not render the report incorrect."). Thus, the Court finds that, as a matter of law, it is not misleading or inaccurate to report a delinquent debt that occurred during the pendency of a bankruptcy, and that the industry guidelines—such as Metro 2—do not establish the standards for accuracy under the FCRA. Because Mrs. Florence fails to prove that the reports on the mortgage accounts and the Judgment contained inaccurate information, which precludes the § 1681i analysis from proceeding, the Court denies Mrs. Florence's Motion for Summary Judgment.

### B. Mr. Florence's Motion for Summary Judgment

Mr. Florence's Motion for Summary Judgment reasserts the same infractions as Mrs. Florence's.[5] (*See generally* Mr. Florence's MSJ, ECF No. 161). Specifically, Mr. Florence asserts inaccuracies with the mortgage accounts and the Judgment. (*Id.*). Because the arguments regarding the Judgment are identical to Mrs. Florence's, the Court, as discussed *supra*, denies summary judgment on Experian's reporting of the Judgment. Additionally, because the Shellpoint and SPS accounts are the identical accounts that Mrs. Florence seeks summary judgment for, the Court denies summary judgment pursuant to its analysis *supra.*

As to Cenlar, however, the Court did not address summary judgment with Mrs. Florence as she forewent seeking summary judgment for the Cenlar account. In the instant Motion, Mr. Florence argues that "the Cenlar account was included in [Mr. Florence's] bankruptcy, and . . . Experian failed to process the Cenlar Tradeline altogether, and simply continued reporting the tradeline and its patently incorrect 180-day past due payment history for nine months following [Mr. Florence's] [P]etition date." (Mr. Florence's MSJ 19:17–21). However,

---

[5] Although Mr. Florence's Motion includes headlines stating "The undisputed facts establish that Experian rereported inaccurate information on Plaintiff's Ocwen and OneWest Tradelines" and "Experian reported patently incorrect information on the Ocwen and OneWest Tradelines," Plaintiff then fails to address the Ocwen and OneWest Tradelines and instead addresses the Shellpoint, SPS, and Cenlar accounts. (Mr. Florence's MSJ 17:10–13, 18:20). As such, the Court will not address the Ocwen and OneWest Tradelines.

as discussed *supra*, "the FCRA does not prohibit the accurate reporting, after discharge, of debts that were delinquent during the pendency of the bankruptcy action." *Mortimer v. Bank of Am.*, 2013 WL 1501452, at *10 (N.D. Cal. Apr. 10, 2013). Because the Cenlar accounts detailed delinquencies in 2012, before the eventual remedy from the Confirmed Plan and the Discharge, Experian did not report inaccurate information. Accordingly, the Court denies summary judgment on Experian's liability for the Cenlar account and denies Mr. Florence's Motion for Partial Summary Judgment.[6]

### C. Experian's Motions for Summary Judgment

Experian filed Motions for Summary Judgment against both Mrs. Florence and Mr. Florence. (ECF Nos. 171, 172). The Court will first address the Motion against Mrs. Florence and will then turn to the Motion against Mr. Florence.

#### 1. Motion for Summary Judgment against Mrs. Florence

Experian argues that Mrs. Florence "simply cannot establish that any inaccuracy existed in her credit report after Experian's reinvestigation concluded on December 10, 2015." (Experian's First MSJ 10:11–12, ECF No. 171). Experian continues that the mortgage accounts were each "updated to show that [they] had been 'discharged in bankruptcy,' which is consistent with [Mrs. Florence's] representations in the dispute letter." (Experian's First MSJ 10:21–22). Experian supports this by attaching the updated December 10, 2015 Consumer Disclosure, (*see* Ex. H to Experian's First MSJ at 9–22, ECF No. 171-4). In the Consumer Disclosure, Experian added comments to each of the mortgage accounts stating that the debt had been "included in Chapter 13 Bankruptcy on Jan. 24, 2014." (*Id.*).

Moreover, Experian states that both the Cenlar and Shellpoint accounts showed no delinquencies after the Bankruptcy Petition date in March 2012, and SPS only showed one

---

[6] Notably, Mr. Florence's Complaint asserts violations against Experian regarding a Commonwealth account and a Plusfour account, but Mr. Florence fails to address these accounts in his Motion for Summary Judgment. (*See* Mr. Florence's Compl. ¶¶ 119–154, 2:16-cv-0692-GMN-NJK, ECF No. 1).

delinquency after the Bankruptcy Petition date, but before the discharge. (*Id.*); (Experian's First MSJ 11:6–15). As the Court holds *supra*, "[t]he fact that Congress explicitly permits bankruptcies themselves to be reported for ten years from the date of discharge, *see* 15 U.S.C. § 1681c(a)(1), undermines any argument that Congress intended specific debts discharged in bankruptcy to be categorically unreportable." *Abeyta*, 2016 WL 1298109, at *2; *see Polvorosa v. Allied Collection Serv., Inc.*, No. 2:16–cv–1508-JCM-CWH, 2017 WL 29331, at *3 (D. Nev. Jan. 3, 2017) ("[R]eporting delinquencies during the pendency of a bankruptcy or during a bankruptcy's automatic stay is not itself a violation of the FCRA."). Accordingly, Mrs. Florence cannot, as a matter of law, establish an inaccuracy based on the mortgage accounts, and the Court therefore grants summary judgment in Experian's favor.

As to the Judgment, as previously held, a CRA is not required as part of its reporting duties or reinvestigation duties to provide a legal opinion on the merits. *Carvalho*, 629 F.3d at 892. Moreover, Mrs. Florence does not dispute that the Judgment was entered against her. (Depo. of Mrs. Florence at 53, Ex. L to Experian's First MSJ, ECF No. 171-4). Instead, Mrs. Florence responds that "[t]he public record was clear" and that the judgment was "materially misleading to rereport it against the backdrop of the fact that Wells Fargo obtained [the Judgment] in violation of the stay." (Mrs. Florence's Resp. 25:6, 25:8–10, ECF No. 173). The Court finds this argument unpersuasive. In light of the Judgment actually being entered and Experian not having a duty to legally investigate the merits of the Judgment in constructing its report, the Court grants summary judgment in Experian's favor.

### 2. *Motion for Summary Judgment against Mr. Florence*

Experian seeks summary judgment against Mr. Florence due to Mr. Florence failing to identify an "inaccuracy in his post-reinvestigation credit disclosure" because "[f]ollowing Experian's reinvestigation, the three mortgage accounts in dispute all reported no outstanding

balance, and neither of the collections accounts included in [Mr. Florence's] dispute letter were listed in the bankruptcy schedules." (Experian's Second MSJ 10:4–7).

Preliminarily, the mortgage accounts and the Judgment that Experian seeks summary judgment on are the identical accounts that Experian sought summary judgment on against Mrs. Florence. Specifically, the Shellpoint account showed no delinquencies after the Petition date, and the SPS and Cenlar accounts showed delinquencies after the Bankruptcy Petition date, but before the Discharge. (Ex. G to Experian's Second MSJ at 6, 8, ECF No. 172-3). As held *supra*, these reported delinquencies are not inaccuracies. Therefore, the Court grants summary judgment for Experian on these accounts.

The only accounts that differ in Mr. Florence's Complaint from Mrs. Florence's are the Plusfour and Commonwealth accounts (collectively the "collections accounts"). (*See* Mr. Florence's Compl. ¶¶ 119–154, 2:16-cv-0692-GMN-NJK). Experian seeks summary judgment on these collections accounts because in his Complaint, Mr. Florence "does not dispute the existence of these collections debts, but instead insists that they were included in the bankruptcy discharge." (Experian's Second MSJ 12:28–13:1) (citing Ex. F at 4–5 to Experian's Second MSJ, ECF No. 172-3). Moreover, Experian argues that "[n]either a Commonwealth account nor a Plusfour account with the account number [Mr. Florence alleged in his Complaint] was included in the bankruptcy schedules, which lists all creditor claims subject to the bankruptcy." (*Id.* 13:2–4) (citing Ex. B to Experian's Second MSJ, ECF No. 172-2).

Mr. Florence fails to address these accounts in his Motion for Summary Judgment or in his Response, (ECF No. 175), and the Court therefore construes these facts as undisputed. *See* Fed. R. Civ. P. 56; *see also Heinemann v. Satterberg*, 731 F.3d 914, 917 (9th Cir. 2013) ("If there is a failure to respond, the Rule 'authorizes the court to consider a fact as undisputed.'"). As such, the Court grants summary judgment in Experian's favor.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that William E. Florence's Motions for Summary Judgment, (ECF Nos. 161, 162), are **DENIED**.

**IT IS FURTHER ORDERED** that Regina H. Florence's Motions for Summary Judgment, (ECF Nos. 163, 164) are **DENIED**.

**IT IS FURTHER ORDERED** that Experian's Motions for Summary Judgment, (ECF Nos. 171, 172) are **GRANTED**.

**IT IS FURTHER ORDERED** that the remaining parties shall submit a joint status report identifying whether there are any non-moot claims remaining in light of this Order. The parties shall have twenty-one days from the date of this Order to file the status report. Failure to do so will result in the Court dismissing the remaining claims and closing the case.

The Clerk of the Court shall enter judgment accordingly.

**DATED** this __1__ day of March, 2018.

_____
Gloria M. Navarro, Chief Judge
United States District Judge